GARGASZ, Appellant,

v.

NORDSON CORPORATION, Appellee.

[Cite as *Gargasz v. Nordson Corp.* (1991), 68 Ohio App.3d 149.]

Court of Appeals of Ohio,
Lorain County.

No. 90CA004912.

Decided Oct. 30, 1991.

*Geoffrey R. Smith,* for appellant.

*Kenneth S. Stumphauzer,* for appellee.

REECE, Judge.

Plaintiff-appellant, Ted. J. Gargasz, claims that he was wrongfully discharged by the defendant-appellee, Nordson Corporation. He appeals from the decision of the trial court granting summary judgment in favor of Nordson Corp. The only issue on appeal is whether there exists any triable issues of fact.

Gargasz was employed by Nordson Corp. from June 11, 1979 until he was involuntarily terminated on October 27, 1987. At no time did the parties execute a written contract defining the duration or terms of their employment

relationship.[1] While Gargasz held various positions with Nordson Corp., he was always a salaried employee working in the area of quality control. During his first six years of employment, Gargasz received satisfactory annual reviews and annual pay increases. During his last two years with Nordson Corp. he reported to different supervisors and his performance was rated at below acceptable standards.

Gargasz received a written warning, dated October 15, 1987, from his supervisor. In this letter Gargasz was reprimanded for taking unscheduled vacation time without prior approval. He was also warned that future infractions could result in his termination from Nordson Corp. Concerned that this letter was in his personnel file, Gargasz reviewed his personnel records on October 26, 1987. The following day Gargasz was fired by Nordson Corp.

Gargasz filed a complaint against Nordson Corp. for wrongful discharge. Nordson Corp. filed a motion for summary judgment which the trial court granted on September 17, 1990. Gargasz appeals this decision raising the following assignment of error:

### Assignment of Error

"The trial court erred in granting defendant's motion for summary judgment on the grounds that no issue of disputed fact remained as to whether defendant's representations to plaintiff altered the terms of the employment at-will agreement.

"A. Appellee was barred by the doctrine of promissory estoppel from discharging appellant in contravention of its written disciplinary procedures.

"B. In the alternative, appellee was barred from discharging appellant by the implied contract created by appellee's promulgation of employment manuals and personnel policies."

The Ohio Supreme Court has held that in the area of employment contracts, there exists "a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other." *Henkel v. Educational Research Council* (1976), 45 Ohio St.2d 249, 255, 74 O.O.2d 415, 418, 344 N.E.2d 118, 122. See,

---

1. On September 13, 1983, the parties did execute a non-competition and confidentiality agreement. This agreement provided that Gargasz would not reveal confidential information of Nordson Corp.'s operation nor would he accept employment with Nordson Corp.'s competitors for two years following the termination of his employment. In return, Nordson Corp. had the option to either permit employment by a competitor or pay compensation to Gargasz in lieu of accepting a competing position. Nowhere in this agreement is there any reference to the duration of employment or conditions related to the termination of employment.

also, *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 102–103, 19 OBR 261, 263, 483 N.E.2d 150, 153, and fn. 1. Given that the employment agreement between Gargasz and Nordson Corp. was oral, with no terms of duration, we must start from the position that the employment agreement was terminable-at-will. Only if we find, after reviewing the facts most favorably for Gargasz, that reasonable minds could adduce additional terms or circumstances which overcome this presumption, will we reverse the trial court's grant of summary judgment. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. See, also, Civ.R. 56(C).

Gargasz claims that Nordson Corp. made additional representations which altered their employment-at-will relationship. In support of his position, Gargasz relies solely on a four-page policy manual written by Nordson Corp. and distributed to its employees. This manual, entitled "Rules for Employees" ("the Manual"), is a statement of Nordson Corp.'s policies relating to "discipline and proper standards of conduct" for employees. The issue in this case is whether reasonable persons could reach different results on how the Manual is to be interpreted and applied. *Temple, supra.* Because of the paramount importance of this one piece of evidence, it is necessary to discuss it in some detail.

Two pages of the Manual are devoted to listing twenty-three company rules, violation of which will result in some disciplinary action taken against an employee. At the end of this list, the Manual states that these rules "are not intended to be all inclusive" and that additional rules may be adopted by either the corporation or management. The following language immediately precedes the listed rules:

"Management considers the following and similar infractions, depending upon the circumstances and nature of each case, sufficient grounds for disciplinary action ranging from reprimand to discharge:

"ORDINARY PROGRESSION OF DISCIPLINARY PROCEDURE[:]

"Written Reprimand[;]

"Disciplinary Suspension (Short term 1 to 5 work days)[;]

"Disciplinary Suspension (Long term 6 or more work days)[;]

"Discharge[.]"

■ Relying on the doctrine of promissory estoppel, Gargasz first claims that Nordson Corp., through its Manual, made representations upon which he reasonably relied to alter his employment-at-will agreement. The doctrine of promissory estoppel was first applied to employment-at-will agreements by the Ohio Supreme Court in *Mers, supra,* 19 Ohio St.3d at 105, 19 OBR at 265, 483 N.E.2d at 155, when the court stated:

"[T]he doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise."

Gargasz argues that the Manual promised all employees that the sequence of disciplinary procedures would be mandatory and strictly adhered to by Nordson Corp., and that before an employee would be discharged for violating an enumerated rule, the employee would first be given the benefit of a written reprimand and a short-term and long-term suspension. He contends that he was wrongfully discharged in violation of this stated procedure when he was discharged for insubordination, an enumerated rule, without receiving the benefit of either a warning or suspension.

In response, Nordson Corp. argues that its Manual did not apply to Gargasz as a salaried employee and a member of Nordson Corp.'s management. Nordson Corp.'s position is that the Manual applies only to hourly employees, of which Gargasz was not a member. In support of its position, Nordson Corp. points to references in the Manual that these rules were created by management and subject to change by management. Nordson Corp. argues that, by implication, these references to management exclude management personnel from those to whom the Manual is addressed. In response, Gargasz refers to the title of the Manual, "Rules for Employees," which is all encompassing.

On review, we find the positions of both parties to be untenable. We must therefore determine whether there exists any ground upon which the judgment of the trial court should be affirmed. *Joyce v. General Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174; *Taylor v. Yale & Towne Mfg. Co.* (1987), 36 Ohio App.3d 62, 63, 520 N.E.2d 1375, 1376. In applying promissory estoppel, we look to the elements of the doctrine as stated in *Mers, supra,* at 104, 19 OBR at 264, 483 N.E.2d at 154 (citing to 1 Restatement of the Law 2d, Contracts (1981), Section 90). It is fundamental that the party claiming the benefit of the estoppel, the promisee, be justified in his reliance on the promise made by the promisor. 5 Williston, Law of Contracts (3 Ed.1961) 321, Section 692.

We agree with Nordson Corp. that Gargasz's reliance on the Manual as altering the employment-at-will relationship was not justified. We do not agree with the reasoning advanced by Nordson Corp. The Manual was clearly addressed to all employees and the fact that some part of management is empowered to create policy does not exclude all management personnel from the application of Nordson Corp.'s rules. However, we do not accept

Gargasz's position that the Manual created a mandatory sequence of disciplinary procedures by Nordson Corp. The Manual clearly states that depending on the "nature and circumstances" surrounding an employee's infraction, disciplinary action may be taken "ranging from reprimand to discharge." In effect, Nordson Corp. was merely publishing the possible penalties that may be taken for violating company policies, while maintaining discretion as to which penalty will be used. While use of the words "ordinary progression" creates a sense of sequential order to the disciplinary procedures, we find that common sense demonstrates the error in this assumption. As an example, we turn to one of Nordson Corp.'s enumerated rules, the prohibition against stealing company property. Under Gargasz's argument, an employee caught stealing must first be given the benefit of a written reprimand, then a short-term suspension followed by a long-term suspension. This would be the result regardless of the value of the property stolen. Similarly, we do not think that anyone could reasonably believe that Nordson Corp. intended to give reprimands and suspensions to an employee who physically attacks a fellow employee or supervisor—another enumerated rule. The absurdity of these examples demonstrates the weakness in Gargasz's position. There could hardly be three bites allowed to those apples. Having determined that the Manual allows Nordson Corp. discretion in determining what discipline is appropriate for violation of its rules, we will not substitute our judgment for that of Nordson Corp.'s management in determining whether Gargasz's discharge was proper.

In conclusion, we find reasonable minds could come to but one conclusion, that it was unreasonable for Gargasz to rely on Nordson Corp.'s Manual in the belief that he would be subject to a sequence of disciplinary actions prior to his discharge. Given that Gargasz's reliance was unreasonable, he failed to establish a necessary element of promissory estoppel as altering his employment-at-will agreement.

■ Gargasz's second argument is that Nordson Corp.'s Manual created an implied contract that he would not be discharged without first receiving the benefits of a reprimand and suspension. The legal effect of an implied contract and an express contract is identical, the only distinction being the manner in which mutual assent is manifested. 1 Williston on Contracts (4 Ed.1990) 18–25, Section 1–5. See, also, *Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney* (1901), 65 Ohio St. 104, 61 N.E. 152, paragraph one of the syllabus. While the Ohio Supreme Court has recognized that based on the facts and circumstances, an implied employment contract may arise out of an employment-at-will agreement, *Mers, supra,* at paragraph two of the syllabus, the essential elements of a contract must still be present.

With this in mind, we note that seldom will an employee, failing to establish promissory estoppel to alter an employment-at-will agreement, be able to establish an implied employment contract based on the same set of facts. As we have previously held, "employee manuals and handbooks are usually insufficient, by themselves, to create a contractual obligation upon an employer." *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 671, 591 N.E.2d 752 (citing *White v. Wright Tool Co.* (Sept. 23, 1987), Summit App. No. 12991, unreported, 1987 WL 17920).

In this case Gargasz was unsure as to when he came into possession of Nordson Corp.'s Manual. He never questioned his supervisors about the policies and procedures printed in the Manual, nor did he have knowledge of the application of these procedures to similarly situated employees. Based on these facts, reasonable minds could reach but one conclusion, that Gargasz and Nordson Corp. never manifested mutual assent to the terms of the Manual as a condition of their employment agreement.

Based on the foregoing, Gargasz's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and CACIOPPO, J., concur.