[Cite as *Sims v. Midvale*, 2012-Ohio-6081.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| DIANA SIMS | : | Patricia A. Delaney, P.J. |
| | : | John W. Wise, J. |
| Plaintiff-Appellant | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. 2012 AP 03 0021 |
| | : | |
| | : | |
| VILLAGE OF MIDVALE, et al., | : | O P I N I O N |
| | | |
| Defendants-Appellees | | |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from Tuscarawas County Court of Common Pleas Case No. 2010 CT 10 1128 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | December 18, 2012 |
| APPEARANCES: | |

| For Plaintiff-Appellant | For Defendants-Appellees |
|---|---|
| E.K. WRIGHT | WILLIAM E. PFAU, III |
| 134 FOURTH STREET, N.W. | Pfau, Pfau & Marando |
| P.O. Box 711 | P.O. Box 9070 |
| New Philadelphia, Ohio 44663 | Youngstown, Ohio 44513 |

*Edwards, J.*

{¶1} Plaintiff-appellant, Diana Sims, appeals from the February 22, 2012, Judgment Entry of the Tuscarawas County Court of Common Pleas granting the Motion for Summary Judgment filed by defendants-appellees Village of Midvale, Larry Eggerton and Ron McComb.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant Diana Sims started working for appellee Village of Midvale in 1991 as the village clerk. In 1993, she became a clerk in the water department. Appellant was an at-will employee.

{¶3} In 2004, appellee Village of Midvale adopted a Personnel Policies and Procedures manual. Appellant received a copy of such manual which, on the top of the front page states in bold face, in relevant part, as follows: "These policies are not to be considered an employment contract with any employee."

{¶4} As of August of 2004, appellant was working 19 hours a week at the water department, which was also known as the Board of Public Affairs. At some point, appellee Village of Midvale made a deal to take over the Village of Roswell's water department. As a result, appellant, as a clerk in the water department, would have to handle the clerical duties associated with approximately 100 additional customers, in addition to the 850 customers that appellee Village of Midvale already had, without any additional compensation.

{¶5} At least a week before her termination from employment, the clerk from the Roswell Water Department brought in a big stack of papers and told appellant that she was "supposed to do this." Transcript at 24. The clerk provided appellant with

envelopes that she indicated were deposits. Appellant put the envelopes in the safe. A week or so before her termination, Ron McComb, a Trustee of the Board of Public Affairs, asked appellant what she had done with the deposits. Appellant then told him that they were in the safe. Appellant, during her deposition, testified that after McComb asked her if she would make the deposits, she told him that she would not. Appellant testified that she did not recall giving him any reason for her refusal to make the deposits.

{¶6} Subsequently, on August 4, 2010, McComb and Larry Eggerton, two of the Trustees of the Board of Public Affairs, came into appellant's office and she told them that she would not handle the Roswell accounts. Appellant then asked Eggerton about his alleged statements to her husband (the water department superintendent) that appellant deserved a raise. After Eggerton denied making such statements, appellant "took the papers and just kind of shoved them--…on the floor." Transcript at 37. Appellant was then fired for insubordination for throwing the papers on the floor. Appellant testified that she told the men that she did not have the time or the room to do the Roswell work and that "I felt it was going to be a lot of extra work with no compensation." Transcript at 40. She told them that she was not going to do the work until she got more money.

{¶7} On October 6, 2010, appellant filed a complaint against appellees in the Tuscarawas County Court of Common Pleas. Appellant, in her complaint, alleged that she was wrongly terminated, alleging causes of action sounding in violation of public policy, implied and expressed contract and promissory estoppel. On June 17, 2011,

appellees filed a Motion for Summary Judgment. Pursuant to a Judgment Entry filed on February 22, 2012, the trial court granted appellees' motion.

{¶8} Appellant now raises the following assignments of error on appeal:

{¶9} "I. THE TRIAL COURT IMPROPERLY GRANTED THE DEFENDANTS MOTION FOR SUMMARY JUDGMENT NOTWITHSTANDING A JURY ISSUE EXISTED AS TO WHETHER DEFENDANTS HAD AUTHORITY TO DISMISS AND WHETHER DEFENDANT MIDVALE'S EMPLOYEES FAILED TO FOLLOW ITS SELF-IMPOSED REGULATIONS.

{¶10} "II. THE TRIAL COURT FAILED TO RECOGNIZE THAT THE SELF-IMPOSED LEGISLATION OF DEFENDANT MIDVALE PROHIBITED DEFENDANTS MCCOMB AND EGGERTON FROM DISMISSING PLAINTIFF."

I, II

{¶11} Appellant, in her two assignments of error, argues that the trial court erred in granting summary judgment in favor of appellees. We disagree.

{¶12} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it

appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

**{¶13}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997–Ohio–259, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 1996–Ohio–107, 662 N.E.2d 264.

**{¶14}** Appellant, in the case sub judice, argues that the trial court erred in granting summary judgment in favor of appellees because appellant's termination was not in accordance with the Personnel Policies and Procedures manual provided to her. Appellant argues that under the manual, her supervisors, Eggerton and McComb, did not have the right to terminate her and she was denied her right to appeal to the Village of Midvale Council.

**{¶15}** However, as a general rule in Ohio, employee handbooks do not constitute an employment contract. *Stembridge v. Summit Acad. Mgmt.,* 9th Dist. No.

23083, 2006–Ohio–4076, ¶ 27, citing *Rudy v. Loral Defense Sys.*, 85 Ohio App.3d 148, 152, 619 N.E.2d 449 (9th Dist. 1993). The handbook is simply a unilateral statement of rules and policies creating no obligations or rights. *Tohline v. Cent. Trus. Co.*, 48 Ohio App.3d 280, 282, 549 N.E.2d 1223 (1st Dist. 1988).

**{¶16}** The Ninth District Court of Appeals addressed the issue raised herein in *Stembridge v. Summit Acad. Mgt.,* supra:

**{¶17}** "An employment relationship is terminable at the will of either party unless expressly stated otherwise. (Citation omitted). *Henkel v. Educational Research Council of Am.* (1976), 45 Ohio St.2d 249, 255, 344 N.E.2d 118. However, the employment at-will doctrine is the subject of two exceptions: (1) the existence of an implied or express contract which alters the terms of discharge; and (2) the existence of promissory estoppel where representations or promises were made to an employee. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 104, 483 N.E.2d 150. Appellant has argued that his employee handbook constitutes an exception to the employment-at-will doctrine.

**{¶18}** "Generally, employee handbooks do not constitute an employment contract. *Rudy v. Loral Defense Sys.* (1993), 85 Ohio App.3d 148, 152, 619 N.E.2d 449. This Court has previously held that "'employee manuals and handbooks are usually insufficient, by themselves, to create a contractual obligation upon an employer.'" *Gargasz v. Nordson Corp.* (1991), 68 Ohio App.3d 149, 155, 587 N.E.2d 475, quoting *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 591 N.E.2d 752. Evidence of an employee handbook may be considered when deciding whether an

implied contract exists, but its existence alone is not dispositive of the question. *Wright v. Honda of Am. Mfg., Inc.* (1995), 73 Ohio St.3d 571, 574–575, 653 N.E.2d 381.

{¶19} "In *Karnes v. Doctors Hospital* (1990), 51 Ohio St.3d 139, 141, 555 N.E.2d 280, the Ohio Supreme Court held that an employee handbook that expressly disclaimed any employment contract could not be characterized as an employment contract. This Court has also addressed disclaimers and found that "'[a]bsent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook.'" *Westenbarger v. St. Thomas Med. Ctr.* (June 29, 1994), 9th Dist. No. 16119, at 7, quoting *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph one of the syllabus." *Id.* at paragraphs 26–28.

{¶20} In the case sub judice, appellant was an at-will employee. The Personnel Policies and Procedures manual provided to appellant clearly stated at the top in bold face that the polices "are not to be considered an employment contract with any employee." The manual further provides, in Section 1.16, that the "Village of Midvale Council, at its option, may change, delete, suspend or discontinue any or parts of the policies in this document at any time without prior notice…" We find, based on the foregoing, that the trial court did not err in finding that appellant was an at-will employee and that the trial court did not err in granting summary judgment in favor of appellees on appellant's contract claims.

{¶21} We further find that the trial court did not err in granting summary judgment to appellees on appellant's promissory estoppel claim. The elements necessary to establish a claim for promissory estoppel are: (1) a promise clear and

unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. *Schepflin v. Sprint-United Telephone of Ohio*, 5th Dist. No. 96-CA-62-2, 1997 WL 1102026, 3-4 (April 29, 1997), citing *Stull v. Combustion Engineering, Inc.* , 72 Ohio App.3d 553, 557, 595 N.E.2d 504 (3rd Dist. 1991).

{¶22} Upon our review of the record, we find no evidence that appellees made any promises of continued employment to appellant independent of the Personnel Policies and Procedures manual. We note that appellant, in her brief, does not argue that any such promises were made.

{¶23} Appellant, in her complaint, further alleged that her termination was in violation of public policy. A cause of action for wrongful discharge in violation of public policy sounds in tort. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), paragraph three of the syllabus. A plaintiff must prove the following elements to prevail on such a claim: (1) a clear public policy exists and is manifested in a state or federal constitution, in statute or administrative regulation, or in the common law (the clarity element), (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element), (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element), and (4) the employer lacked an overriding legitimate business justification for the dismissal (the overriding-justification element). *Collins v. Rizkana*, 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653 (1995). The clarity and jeopardy elements involve questions of law; the causation and overriding-justification elements involve questions of fact. Id. at 70.

**{¶24}** In the case sub judice, appellant has not presented any argument or evidence in support of her assertion that her termination was in violation of public policy. As noted by appellees, appellant has not argued the public policy claim in this appeal.

**{¶25}** Based on the foregoing, we find that the trial court did not err in granting summary judgment in favor of appellees.

**{¶26}** Appellant's two assignments of error are, therefore, overruled.

**{¶27}** Accordingly, the judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Edwards, J.

Delaney, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/d1003

[Cite as *Sims v. Midvale*, 2012-Ohio-6081.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

DIANA SIMS                                        :

            Plaintiff-Appellant          :

                               :

-vs-                                              :        JUDGMENT ENTRY

                               :

VILLAGE OF MIDVALE, et al.,                       :

             Defendants-Appellees        :        CASE NO. 2012 AP 03 0021

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____

_____

_____

                                   JUDGES